# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:13-cv-1268-GMN-CWH |
| vs. | ) | |
| | ) | **ORDER** |
| WESTERN COMMUNITY INSURANCE | ) | |
| COMPANY and DOES 1-10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is the Motion to Dismiss for Lack of Jurisdiction (ECF No. 6) filed by Defendant Western Community Insurance Company ("Western").  Plaintiff Evanston Insurance Company ("Evanston") filed a Response (ECF No. 8) and Western filed a Reply (ECF No. 11).

## I.    BACKGROUND

This case arises from a dispute over insurance coverage for ongoing litigation in Nevada state court related to defects in the construction of an apartment complex located in Pahrump, Nevada ("the Nevada Property"). (Compl. ¶ 5, ECF No. 1.)  The underlying action in Nevada state court involves a suit between the owner/developer of the Nevada Property and the general contractor for the construction of the Nevada Property, KOA Development, Inc. ("KOA"). (*Id.* ¶¶ 5, 6(a).)  Construction on the Nevada Property commenced in February 2002, and KOA issued a notice of completion on January 21, 2003. (*Id.* ¶¶ 6(a)–(b).)  In 2005, problems with the construction were first discovered. (*Id.* ¶ 6(c).)  Later, in 2011, a consultant determined that "portions of the complex [were] unsuitable for tenant occupation." (*Id.* ¶ 6(d).)

Plaintiff Evanston is an insurance company, incorporated under the laws of Illinois, that is licensed and authorized to conduct business in Nevada. (*Id.* ¶ 1.)  Previously, Evanston issued a "commercial general liability policy, No. 02GLP005945, to KOA, the general

contractor and defendant in the underlying state action for the policy period of March 22, 2002 to March 22, 2003. (*Id.* ¶ 7.)  Pursuant to that policy, Evanston is currently defending KOA in the underlying state court construction defect action. (*Id.* ¶ 8.)

Western is an insurance company incorporated under the laws of Idaho. (*Id.* ¶ 2.) Western also issued a "commercial general liability policy, No. 8B894201," to KOA for the policy period of March 22, 2003 to March 22, 2007 (the "Western Policy"). (*Id.* ¶ 9.)  The Western Policy allegedly "requires Western to pay those sums that th[e] insured becomes legally obligated to pay as damages because of property damage that takes place during its policy periods." (*Id.* ¶ 10.)  Evanston also asserts that "[t]he Western policy further requires Western to defend the insured, subject to specified conditions, against any suit seeking such damages." (*Id.*)  Furthermore, Evanston alleges that KOA's insurance policy with Western "applies to property damage caused by an occurrence that takes place in the coverage territory, which includes Nevada." (*Id.*)

Based on the Western Policy, Evanston commenced the instant action asserting two causes of action: (1) Declaratory Relief; and (2) Equitable Contribution. (*Id.* ¶¶ 13–19.) Specifically, Evanston contends that some of the damage to the Nevada Property occurred during Western's policy period, yet Western denied coverage to KOA.  (Compl. ¶¶ 11–12.)

In response to the commencement of this litigation, Western filed the instant motion requesting that the Court dismiss the action for lack of personal jurisdiction or, in the alternative, for improper venue. (Mot. to Dismiss, ECF No. 6.)  To support this request, Western provides an affidavit of Clayton Brumett, the regional claims manager for Western. (Mot. to Dismiss 14:20–23, ECF No. 6.)  The affidavit swears that Western does not conduct any business in Nevada, does not have any offices or agents in Nevada, is not licensed in Nevada, and does not direct advertising or any other sales efforts to Nevada. (*Id.* at 14:23– 15:3.)  Rather, Western sells policies only in the states of Idaho and Washington. (*Id.* at 15:4–

5.)  In fact, the policy that Western sold to KOA "was negotiated and issued to KOA in Idaho." (*Id.* at 15:6–7.)

## II.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.  Legal Standard

A party may assert the defense of lack of personal jurisdiction by motion. Fed. R. Civ. P. 12(b)(2).  "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  However, to carry this burden, a plaintiff need only make "a prima facie showing of jurisdictional facts." *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007).  When conflicts exist between the statements made in the affidavits submitted by each party, courts resolve these conflicts in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "The court resolves all disputed facts in favor of the plaintiff." *Id.*

A plaintiff carries its burden by establishing that (1) personal jurisdiction is proper under the laws of the state in which jurisdiction is asserted; and (2) the exercise of jurisdiction does not violate the defendant's right to due process secured by the United States Constitution. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994).  Because Nevada's long-arm statute is co-extensive with the limits of due process, the inquiry into the propriety of personal jurisdiction under Nevada law and the inquiry into the limits of due process collapse into a single inquiry. Nev. Rev. Stat. § 14.065(1) ("A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States.").

"A court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

*Menken*, 503 F.3d at 1056 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).  At bottom, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

"There are two forms of personal jurisdiction that a forum may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction."  *Boschetto,* 539 F.3d at 1016; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–415.  A forum may exercise general personal jurisdiction only when "a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes." *Menken*, 503 F.3d 1056–57.

If the forum lacks general personal jurisdiction over a given defendant, the forum may still exercise specific jurisdiction or, "jurisdiction based on the relationship between the defendant's forum contacts and plaintiff's claims."  *Menken,* 503 F.3d at 57.  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum and the litigation."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted).

To analyze whether the assertion of specific personal jurisdiction in a given forum is proper, courts utilize a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger,* 374 F.3d at 802 (quotation omitted).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Menken*,

503 F.3d at 1057.  Therefore, "[i]f the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*  In cases involving contract disputes, when considering the first prong of this test, courts "typically inquire whether a defendant purposefully avail[ed] itself of the privilege of conducting activities or consummate[d] a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (internal quotation marks omitted).  To determine whether a plaintiff has carried its burden under the second prong, courts consider whether the "plaintiff's claim . . . arises out of or relates to the defendant's forum-related activities"; the plaintiff "must show that [it] would not have suffered an injury 'but for' [the defendant's] forum-related conduct." *Menken*, 503 F.3d at 1058 (applying a "but for" test for forum-related conduct).

"If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant 'to present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985)).  The exercise of jurisdiction in a given forum is reasonable "if under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum." *FDIC v. British-American Ins. Co.,* 828 F.2d 1439, 1442 (9th Cir. 1987) (internal quotation marks omitted).  To that end, the Ninth Circuit has identified seven factors to aid courts when determining whether asserting jurisdiction over a nonresident defendant is reasonable:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CE Distrib., LLC v. New Sensor Corp.*, 380 F. 3d 1107, 1112 (9th Cir. 2004).

**B.     Discussion**

As discussed above, there are two types of personal jurisdiction that the Court may assert over Western:  General Jurisdiction and Specific Jurisdiction.  Neither party disputes that this Court cannot assert general personal jurisdiction over Western.  Specifically, Western asserts, and Evanston does not dispute, that Western's contacts are not sufficiently "substantial, continuous, and systematic," such that Western should be deemed present in Nevada for all purposes. *See Menken*, 503 F.3d 1056–57.  Therefore, the Court need only determine whether the exercise of specific personal jurisdiction over Western in this matter comports with due process.  For the reasons discussed below, the Court concludes the assertion of specific personal jurisdiction over Western is proper.  Accordingly, Western's Motion to Dismiss for Lack of Jurisdiction is DENIED.

**1.     Purposeful Availment**

The Court must first determine whether Evanston has established that Western purposefully availed itself of the privilege of conducting activities in Nevada.  *See Schwarzenegger*, 374 F.3d at 802.

Evanston attempts to carry this burden by pointing to a portion of KOA's Commercial General Liability Policy with Western ("Western Policy") that identifies "Pahrump Senior Associates" as an additionally insured entity. (Resp. 3:9–4:18, ECF No. 8.)  True enough, the Western Policy does name Pahrump Senior Associates as additionally insured under the contract. (Wieczorek Aff. Ex. 1, at 36, ECF No. 9-1.)  However, the Western Policy expressly provides that the address for Pahrump Senior Associates is 13 12th Ave S, Nampa, Idaho 83651 (*id.*), and Evanston has provided no evidence to the contrary.  Accordingly, Evanston cannot rely on the inclusion of Pahrump Senior Associates to establish that Western purposefully directed its activities toward the state of Nevada.

Evanston also argues that Western sufficiently directed its activities to Nevada through

the nationwide territorial coverage clause in the Western Policy. (Wieczorek Aff. Ex. 1, at 37, ECF No. 9-2.)   The Court agrees.   Specifically, the Western Policy defines "Coverage territory" as "The United States of America (including its territories and possessions), Puerto Rico and Canada. (*Id.*)   If Western had wished to avoid suit in all fora except Idaho, it could have limited the coverage territory to the state of Idaho. *See Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913–14 (9th Cir. 1990) (holding, in a dispute between two insurance providers, that an insurance provider purposefully avails itself of the forum when it could have controlled its amenability to suit by limiting the territorial policy limit, but declined to do so); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (noting that the Court has previously "upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that '*envisioned continuing and wide-reaching contacts*' in the forum state." (emphasis added) (quoting *Burger King*, 471 U.S. at 479–80)).   By declining to limit the territorial reach of its insurance policy, Western purposefully availed itself of the benefits of conducting business beyond the borders of Idaho to Nevada.[1]   Therefore, the Court concludes that Evanston has carried its burden of establishing the first prong of the specific jurisdiction inquiry.

### 2.   Defendant's Forum-Related Activities

Next, the Court must determine whether Evanston has adequately established that its "claim …arises out of or relates to the defendant's forum-related activities." *Menken*, 503 F.3d at 1058.

---

[1] Western's Reply merely relies on non-controlling authority from the 10th Circuit and a decision from the New Jersey Supreme Court to establish that the nationwide coverage clause does not amount to purposeful availment. (Reply 1:20–3:14, ECF No. 11 (relying on *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086 (10th Cir. 1998) and *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 649 A.2d 379 (N.J. 1994).)   Although such non-controlling case law can be considered as persuasive authority, it cannot overcome the precedent set out by the Ninth Circuit in *Farmers Insurance Exchange*.

Here, Evanston's claims arise directly out of Western's refusal to contribute to the litigation costs of the underlying state court construction defect action as allegedly required by the Western Policy. Specifically, the Western Policy amounts to a promise to KOA that Western would provide coverage for claims that arose throughout the coverage territory, which extended to the entire United States. (Wieczorek Aff. Ex. 1, at 25, ECF No. 9-2 (providing that Western "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Western] will have the right and duty to defend the insured against any 'suit' seeking those damages."); *see also id.* Ex. 1, at 37, ECF No. 9-2 (providing that the "coverage territory" includes the entire United States).) Evanston's Complaint states that certain construction defects at issue in the underlying state court action allegedly occurred during the policy period of the Western Policy. (Compl. ¶ 11.) The Complaint further asserts that despite these defects triggering Western's duty to defend KOA, Western denied coverage to KOA in the underlying state court action. (*Id.* ¶ 12.) Moreover, Western refused Evanston's requests that Western contribute to the defense, thus requiring Evanston to fund KOA's entire defense. (*Id.* ¶ 18.)

For these reasons, Evanston's claim against Western directly arises out of Western's agreement to defend a suit against KOA in the territorial coverage, which includes a suit filed in the state of Nevada. Both claims in the Complaint relate to the interpretation of the contract between Western and KOA. Accordingly, the Court finds that Evanston has shown that Evanston would not have suffered the alleged injury "but for" Western's contracting to defend a suit against KOA anywhere in the United States, including in the state of Nevada.

### 3. Reasonableness

Because Evanston carried its burden of establishing the first two prongs of the specific personal jurisdiction inquiry, the burden now shifts to Western to "'present a *compelling case*' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802

(emphasis added) (quoting *Burger King,* 471 U.S. at 476-78).  As discussed above, to analyze whether exercising specific personal jurisdiction in a given case would be reasonable, courts in the Ninth Circuit look to seven factors. *See CE Distrib.*, 380 F. 3d at 1112.

Western attempts to carry this burden with three sentences in its Motion to Dismiss.[2] (Mot. to Dismiss 8:6–10, ECF No. 6.)  First, Western asserts that it "does not have or exercise a presence in Nevada." (*Id.* at 8:7.)  Second, Western asserts that the Western Policy "was issued in Idaho by an Idaho insurance company (Western Community) to a company (KOA) physically located in Idaho." (*Id.* at 8:7–9.)  Finally, Western asserts that "[t]he rights and responsibilities which Evanston has asked this Court to adjudicate are already the subject of a lawsuit before an Idaho court." (*Id.* at 8:9–10.)  These assertions are insufficient to present a *compelling* case that the exercise of jurisdiction in Nevada would not be reasonable. Accordingly, the Court concludes that Western has failed to carry its burden of rebutting the reasonableness of personal jurisdiction in Nevada.

### 4.    Conclusion

For the reasons discussed above, the Court concludes that Evanston has carried its burden of establishing the first two prongs of the specific personal jurisdiction inquiry. However, Western failed to rebut the presumption of reasonableness.  Therefore, Western's Motion to Dismiss for lack of personal jurisdiction (ECF No. 6) must be DENIED.

## III.    MOTION TO DISMISS FOR IMPROPER VENUE

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides that a defendant may assert the defense of improper venue by motion. Fed. R. Civ. P. 12(b)(3).  The propriety of a

---

[2] The arguments in Western's Reply likewise do not present a compelling case that personal jurisdiction is not reasonable.  Western's Reply simply repeats the reasonableness factors and then merely asserts that personal jurisdiction is not reasonable because there are ongoing parallel proceedings in Idaho, Nevada's neighbor to the north.  Although the existence of parallel proceedings may warrant other relief, it is insufficient to carry Western's burden of presenting a compelling case that the exercise of specific jurisdiction over Western in this case is not reasonable.  For example, these parallel proceedings may provide adequate cause to change the venue of the case.  However, Western has failed to request such relief.

given choice in venue is governed by 28 U.S.C. § 1391(b).  Venue is first proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  Section 1391(c)(2) further provides that an entity "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2).

Here, Western asserts that venue is not proper in the District of Nevada under § 1391(b)(1) because Western is the only defendant and it resides in Idaho. (Mot. to Dismiss 4:18–25, ECF No. 6.)  However, because the propriety of venue under § 1391(b)(1) turns on whether the Court can permissibly exercise personal jurisdiction over Western in this specific matter, the personal jurisdiction analysis and the venue analysis effectively collapse into a single inquiry.  Because the Court has already concluded that personal jurisdiction in Nevada is proper, venue is therefore also proper.

Because venue is proper in the District of Nevada under § 1391(b)(1), Western's Motion to Dismiss for Improper Venue is DENIED.

## IV.    **CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion to Dismiss (ECF No. 6) filed by Defendant Western Community Insurance Company is **DENIED**.

**DATED** this __31__ day of March, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge