# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:13-cv-01268-GMN-CWH |
| vs. | ) | |
| | ) | **ORDER** |
| WESTERN COMMUNITY INSURANCE | ) | |
| COMPANY and DOES 1 through 10, | ) | |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is a Motion for Partial Summary Judgment (ECF No. 14) filed by Plaintiff Evanston Insurance Company ("Evanston"), a Motion for Summary Judgment (ECF No. 29) and a Motion to Reconsider (ECF No. 47) filed by Defendant Western Community Insurance Company ("Western"). These motions have been fully briefed. (ECF Nos. 19–20, 36, 42, 50–51). For the reasons discussed below, Western's Motion to Reconsider (ECF No. 47) and Motion for Summary Judgment (ECF No. 29) are **DENIED**, and Evanston's Motion for Partial Summary Judgment (ECF No. 14) is **GRANTED**.

## I.    BACKGROUND

This case arises from a dispute over insurance coverage for ongoing litigation in Nevada state court related to defects in the construction of an apartment complex located in Pahrump, Nevada ("the Nevada Property"). (Compl. ¶ 5, ECF No. 1). The underlying action in Nevada state court involves a suit between the owner/developer of the Nevada Property, Pahrump Courtyard Associates ("PCA"), and the general contractor for the construction of the Nevada Property, KOA Development, Inc. ("KOA"). (*Id.* ¶¶ 5, 6(a)). PCA entered into a

contract with KOA (the "KOA Contract"), construction on the Nevada Property commenced in February 2002, and KOA issued a notice of completion on January 21, 2003. (*Id.* ¶¶ 6(a)–(b)).

In 2005, problems with the construction were first discovered by PCA. (*Id.* ¶ 6(c)). Later, in 2011, a consultant determined that "portions of the complex [were] unsuitable for tenant occupation." (*Id.* ¶ 6(d)).  The complaint in the underlying action ("PCA Complaint") alleges causes of action against KOA for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of express warranties; (4) breach of the implied warranty of good workmanship; (5) breach of the implied warranty of habitability; (6) breach of the implied warranty of fitness for a particular purpose; (7) express indemnification; (8) implied contractual indemnification; (9) equitable indemnification; (10) attorneys' fees; (11) negligence; (12) negligent supervision; (13) negligent misrepresentation; and (14) construction deficiencies arising from willful misconduct or fraudulent concealment under Nevada Revised Statutes section 11.202. (*Id.* ¶ 6(e)).

Plaintiff Evanston is an insurance company incorporated under the laws of Illinois (*Id.* ¶ 1).  Evanston had issued a commercial general liability policy to KOA, covering the period of March 22, 2002 to March 22, 2003. (*Id.* ¶ 7).  Pursuant to that policy, Evanston is currently defending KOA in the underlying state court construction defect action. (*Id.* ¶ 8).

Western is an insurance company incorporated under the laws of Idaho. (*Id.* ¶ 2). Western also issued a "commercial general liability policy, No. 8B894201," to KOA for the policy period of March 22, 2003 to March 22, 2007 (the "Western Policy"). (*Id.* ¶ 9).  The Western Policy allegedly "requires Western to pay those sums that th[e] insured becomes legally obligated to pay as damages because of property damage that takes place during its policy periods." (*Id.* ¶ 10).  Evanston also asserts that "[t]he Western policy further requires Western to defend the insured, subject to specified conditions, against any suit seeking such damages." (*Id.*).  Furthermore, Evanston alleges that KOA's insurance policy with Western

"applies to property damage caused by an occurrence that takes place in the coverage territory, which includes Nevada." (*Id.*).

Based on the Western Policy, Evanston commenced the instant action seeking: (1) a declaratory judgment from the Court that Western has a duty to defend KOA in the underlying action, is obligated to reimburse Evanston for a portion of the defense fees and costs incurred, and is obligated to immediately join in and contribute to the defense of KOA in the underlying action; and (2) equitable contribution for the defense fees and costs Evanston has incurred and will incur in the defense of the underlying action. (*Id.* ¶¶ 13–19). Specifically, Evanston contends that some of the damage to the Nevada Property occurred during Western's policy period, yet Western denied coverage to KOA. (*Id.* ¶¶ 11–12).

On April 21, 2014, Western filed its Motion to Stay Proceedings and Vacate Mediation (ECF No. 40) to which a Response (ECF No. 43) and Reply (ECF No. 45) were subsequently filed. On May 19, 2014, Magistrate Judge Carl W. Hoffman entered an Order (ECF No. 46) regarding Western's Motion to Stay Proceedings and Vacate Mediation. Western timely filed its Motion to Reconsider Judge Hoffman's Order denying Western's Motion to Stay. (ECF No. 49). Accordingly, Evanston filed its Response (ECF No. 50), and Western filed its Reply (ECF No. 51).

## II.   **MOTION TO RECONSIDER**

### A.  Legal Standard

Local Rule IB 3–1 provides that "[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a civil ... case ... where it has been shown that the magistrate judge's ruling is *clearly erroneous or contrary to law*." (Emphasis added). A ruling is clearly erroneous if the reviewing court is left with "a definite and firm conviction that a mistake has been committed." *Burdick v. C.I.R.*, 979 F.2d 1369, 1370 (9th Cir.1992). Any party wishing to object to the ruling must submit written objections with points and authorities within 14 days of

1  the magistrate judge's order. LR IB 3–1(a).  The district judge may affirm, reverse, modify, or

2  remand with instructions the ruling made by the magistrate judge. LR IB 3–1(b).

3  **B.  Discussion**

4  The Court has inherent power to control its docket, including the discretion to stay

5  proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).  The determination of

6  whether to stay proceedings is best determined by weighing the competing interests of the

7  parties and of the Court. *Id.*  "Among those competing interests are the possible damage which

8  may result from the granting of a stay, the hardship or inequity which a party may suffer in

9  being required to go forward, and the orderly course of justice measured in terms of the

10  simplifying or complicating of issues, proof, and questions of law which could be expected to

11  result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing

12  *Landis*, 299 U.S. at 268).

13  Magistrate Judge Carl W. Hoffman denied Western's Motion to Stay after "carefully

14  weigh[ing] the competing interests affected by the request for a stay." (Order 2:27–28).  Judge

15  Hoffman found that a stay "would damage Plaintiff by resulting in undue delay." (*Id.* 3:1).

16  Moreover, Judge Hoffman found that "Defendant has not made the strong showing necessary to

17  stay this action given that no further discovery is necessary and the motions for summary

18  judgment are fully briefed [and]…no indication was given of how long a stay would be

19  needed." (*Id.* 3:3–7).  Furthermore, Judge Hoffman was not convinced that the two actions

20  involve the same parties and issues of law. (*Id.* 3:7–8).

21  In its Objection, Western recites the same arguments in its Motion to Stay, asserting that

22  the two actions did involve the same parties and issues of law, Evanston lacks Article III

23  standing, and Evanston's action will not be unduly delayed by a stay. (Objection 3:7–7:10).

24  The Court agrees that a stay would damage Evanston by resulting in undue delay and the two

25  actions do not involve the same parties and issues of law.  Accordingly, the Court finds that

Judge Hoffman's ruling is not clearly erroneous or contrary to law.  Therefore, Western's

Motion to Reconsider (ECF No. 49) is **DENIED**.

### III.   <u>MOTION FOR SUMMARY JUDGMENT</u>

#### A. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable

jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if

reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported

claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When

the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In

contrast, when the nonmoving party bears the burden of proving the claim or defense, the

moving party can meet its burden in two ways: (1) by presenting evidence to negate an

essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**B. Discussion**

**a. Choice of Law**

The first matter the Court must address is a choice of law issue concerning which state's law applies to Evanston's claims. Evanston asserts in its Motion for Partial Summary

Page 6 of 6

Judgment and its Response to Defendant's Motion for Summary Judgment that Nevada law applies because the Nevada Property was built in Nevada, the Western Policy provided coverage for risks in Nevada, the underlying action arose in Nevada, and Idaho law is not in conflict with Nevada law. (*See* Pl.'s Mot. for Partial Summ. J. 9:4–14:5; *see also* Pl's Response 11:1–15:9).  Conversely, Western argues in its Motion for Summary Judgment and its Response to Evanston's Motion for Partial Summary Judgment that Idaho law applies because KOA's principal place of business was located in Idaho, the policy was written in Idaho and addressed to KOA at its offices in Idaho, the insured location per the Schedule of Locations in the Declarations of the Western policy is KOA's Idaho address, and the policy was negotiated and entered into in Idaho. (*See* Def.'s Response 5:9–8:4; *see also* Def.'s Mot. for Summ. J. 10:14–12:17).

Federal courts sitting in diversity must apply "the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). The Court is thus bound to apply Nevada's choice of law rules in determining whether Nevada or Idaho law applies in this case.   Nevada follows the "substantial relationship" or "most significant relationship" test of the Restatement (Second) Conflict of Laws to resolve choice of law questions when an actual conflict exists between the application of the forum state's law and the application of another state's law. *See Williams v. United Servs. Auto. Ass'n*, 849 P.2d 265, 266–67 (Nev. 1993); *Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 789–90 (Nev. 1990); Restatement (Second) Conflict of Laws, § 188 (1971).

Here, there does not appear to be any actual conflict between Idaho law and the law of this Court's forum state, Nevada.  Evanston explicitly asserts that for the purposes of this action, the laws of Idaho and Nevada are in accord (*See* Pl.'s Mot. for Partial Summ. J. 9:4–14:5), and Western has failed to point to any actual conflict between the two laws, (*See* Def.'s Response; Def.'s Mot. for Summ. J.).  Additionally, the Court conducted an independent

1   review of the relevant Idaho and Nevada law and has failed find any actual conflict between the

2   two laws.  Accordingly, Nevada law will be applied in this case. *See Candelaria Indus., Inc. v.*

3   *Occidental Petroleum Corp.*, 662 F.Supp. 1002, 1004 (D. Nev. 1984).

4          **b.  Duty to Defend**

5          Under Nevada law, the duty to defend is broader than the duty to indemnify, and there is

6   no duty to defend where there is no potential for coverage. *United Nat'l Ins. Co. v. Frontier Ins.*

7   *Co.*, 99 P.3d 1153, 1158 (Nev. 2004).  "A potential for coverage only exists when there is

8   arguable or possible coverage." *Id.*  However, if there is any doubt as to whether the duty to

9   defend arises, this doubt must be resolved in favor of the insured, and once the duty to defend

10   arises, it continues throughout the course of the litigation. *Id.*  "The purpose behind construing

11   the duty to defend so broadly is to prevent an insurer from evading its obligation to provide a

12   defense for an insured without at least investigating the facts behind a complaint." *Id.*

13   "Determining whether an insurer owes a duty to defend is achieved by comparing the

14   allegations of the complaint with the terms of the policy." *Id.*

15          Under the Western Policy, coverage extends to "property damage" that is caused by an

16   "occurrence" that takes place in the "coverage territory" within the policy period. (Ex. 2 to Pl.'s

17   Partial Mot. for Summ. J. at 42, ECF No. 18–2).  The Western Policy also provides a "duty to

18   defend the insured against any 'suit' seeking those damages." (*Id.*)

19          Evanston argues in its Motion for Partial Summary Judgment that, under Nevada Law,

20   Western's duty to defend KOA arises because the underlying action alleges that the negligent

21   work of KOA's subcontractors resulted in post-construction physical damage to PCA's

22   property during the period of the Western Policy. (6:5–8).  In both its Response and Motion for

23   Summary Judgment, Western sets forth many arguments as to why it does not have a duty to

24   defend KOA.  First, Western argues that it does not owe KOA a duty to defend because there

25   was no "occurrence" as that term is defined in the Western Policy. (*See* Def.'s Mot. for Summ.

J. 14:1–16:15).  Second, Western argues that there was no "property damage" as that term is defined in the Western Policy. (*See Id.* 16:16–19:2).  Third, Western argues that there was no occurrence within the policy period of the Western Policy. (*See Id.* 19:3–20:4).  Finally, Western argues that five exclusions in the Western Policy preclude coverage. (*See Id.* 20:5–27:2).  The Court will take each argument raised by Western in turn to determine if Western owes KOA a duty to defend.

### 1.   Occurrence

Under the Western Policy, coverage extends to "property damage" that is caused by an "occurrence" that takes place in the "coverage territory" within the policy period. (Ex. 2 to Pl.'s Partial Mot. for Summ. J. at 42).  The Western Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. 3 to Pl.'s Partial Mot. for Summ. J. at 6, ECF No. 18–3).  The Western Policy does not define accident, however, the Nevada Supreme Court has defined "accident," in the absence of a definition in a CGL policy, as "a happening that is not expected, foreseen, or intended." *Beckwith v. State Farm Fire & Cas. Co.*, 83 P.3d 275, 276 (Nev. 2004) (en banc) (quotation omitted).

Western argues that it does not owe KOA a duty to defend because there was no "occurrence" as that term is defined in the Western Policy. (*See* Def.'s Mot. for Summ. J. 14:1–16:15).  Particularly, Western asserts that "where faulty workmanship does not result in property damage other than the faulty work itself, there is no 'occurrence.'" (*Id.* 14:2–3 (citing *Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes* § 8.03(a)[B], p. 702 (16th ed. 2013)).

This issue was recently been presented to another court in this district. *See Big-D Const. Corp. v. Take it for Granite Too*, 917 F. Supp. 2d 1096, 1107 (D. Nev. 2013).  There, the court noted that "the Nevada Supreme Court has not determined whether an insured's faulty

workmanship itself constitutes an accident, and therefore an occurrence.  Consequently, the Court must predict how the Nevada Supreme Court would decide the issue." *Id.* (citing *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 944 (9th Cir. 2004)).  The court concluded that "the Nevada Supreme Court would hold that faulty workmanship itself does not fall under the common meaning of an accident, and therefore is not an occurrence." *Id.* at 1108.  However, the court went on to predict that "the Nevada Supreme Court would hold that an *unexpected happening* caused by faulty workmanship could be an occurrence." *Id.* (emphasis added).

The Court agrees with the analysis in *Big-D* and finds that, based on the allegation in the PCA Complaint, it is arguable that the results from the alleged faulty workmanship were unexpected.  Moreover, because the results from the alleged faulty workmanship could have been unexpected, there could have been an occurrence as defined by the Western Policy.  Therefore, this argument does not preclude all possible or arguable coverage and does not show that Western has no duty to defend.

## 2.  Property Damage

Next, Western argues that there was no "property damage" as that term is defined in the Western Policy. (*See* Def.'s Mot. for Summ. J. 16:16–19:2.)  The Western Policy defines property damage as follows:

> a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Ex. 3 to Pl.'s Partial Mot. for Summ. J. at 7)  Particularly, Western asserts that the damage alleged in PCA's suit is economic damage, and claims solely alleging faulty construction do not

allege "property damage" under a CGL policy. (Def.'s Mot. for Summ. J. 16:17–18:11). Additionally, Western argues that there was no property damage under the economic loss rule. (*Id.* 18:12–24).

Western cites one case from this district to support its assertion that claims solely alleging faulty construction do not allege "property damage" under a CGL policy. *See Aetna Cas. and Sur. Co. v. McIbs, Inc.*, 684 F.Supp. 246 (D. Nev. 1988).  In *McIbs*, the insured developed equipment that could be installed in cement block manufacturing plants to produce concrete blocks. *Id.* at 247.  A manufacturer used the insured's equipment to produce blocks that were subsequently supplied for a construction project. *Id.*  The blocks were incorrectly sized, resulting in the blocks having to be cut to make them fit properly. *Id.*  The block manufacturer filed suit in state court against the insured, alleging as damages the losses sustained in connection with the construction project, anticipated loss profits, storage charges, and loss to its business reputation. *Id.*  The court found that the claims in the underlying action did not allege "property damage" under a CGL policy similar to the Western Policy because there was "no evidence there was physical injury or destruction of any property" on the construction project caused by the blocks. *Id.* at 248.

Here, the PCA Complaint alleges more than mere economic damages.  For example, the PCA complaint alleges physical injury or destruction of property. (*See* Ex. 5 to Pl.'s Mot. for Partial Summ. J. ¶ 42, ECF No. 18–5 (alleging "structural distress in several of the buildings and in parking areas.")).  The allegations in the PCA Complaint stand in stark contrast to the allegations in the underlying suit in *McIbs*.  The Court finds that the PCA Complaint alleges property damage sufficient to support arguable or possible coverage under the Western Policy. Furthermore, because the Court finds that the PCA Complaint alleges more than economic damages, the economic loss rule has no applicability in this case. *See Terracon Consultants W., Inc. v. Mandalay Resort Group*, 206 P.3d 81, 87 (Nev. 2009) (holding that the economic loss

rule "provides that purely economic losses are not recoverable in tort absent personal injury or property damage").

### 3.    Policy Period

Western argues that there was no occurrence within the policy period of the Western Policy. (*See* Def.'s Mot. for Summ. J. 19:3–20:4). Particularly, Western argues that "an 'occurrence' or 'accident' takes place when damages manifest, not when the negligent act took place," and that "[t]he damages for which PCA seeks recompense did not occur until late 2010, over three years after the end of the coverage period." (*Id.* 19:10–11, 20:2–3).

The effective dates of the Western Policy were March 22, 2003 to March 22, 2007, and coverage was terminated on March 29, 2007. (*Id.* 19:19–20). The PCA complaint alleges that "[i]n or around 2005, PCA and/or PCA's asset manager, Pacific West Communities … discovered water around the exterior corner of building number 5, unit # 31, due to a clogged downspout under the sidewalk at the perimeter of the Property." (Ex. 5 to Pl.'s Mot. for Partial Summ. J. ¶ 30). Moreover, the PCA Complaint alleges that "drainage in the parking lot of the Property has been disrupted by subsidence of near surface soils near the main entrance of the Property." (*Id.* ¶ 40) These allegations amount to property damage that manifested in 2005— well within the policy period of the Western Policy. Therefore, because the Court finds that the PCA Complaint alleges an occurrence within the policy period of the Western Policy, this argument does not preclude the existence of arguable or possible coverage under the Western Policy.

### 4.    Policy Exclusions

Western argues that five different exclusions under the Western Policy preclude all possibility of coverage arising from the underlying action. (Def.'s Mot. for Summ. J. 20:5– 27:2). Western asserts the following exclusions: (1) the Expected or Intended Injury exclusion; (2) the Contractual Liability exclusion; (3) the Damage to Property exclusion; (4) the Damage

to Impaired Property exclusion; and (5) the Recall of Products, Work or Impaired Property exclusion. (*Id.*).

First, Western argues that the Expected or Intended Injury exclusion precludes coverage for liability arising from the claim of "willful misconduct or fraudulent concealment" in the PCA Complaint. (*Id.* 20:5–12).  This exclusion precludes coverage for "…'property damage' expected or intended from the standpoint of the insured." (Ex. 2 to Pl.'s Partial Mot. for Summ. J. at 43).  Although Western may be correct in its assertion, this exclusion would only preclude coverage for liability arising from only one of the fourteen claims alleged in the complaint of the underlying action.  Therefore, this exclusion alone does not preclude all arguable or possible coverage under the Western Policy.

Second, Western argues that the Contractual Liability exclusion precludes coverage on all of the claims alleged by PCA against KOA. (Def.'s Mot. for Summ. J. 20:13–25:7).  This exclusion precludes coverage for "…'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (Ex. 2 to Pl.'s Partial Mot. for Summ. J. at 43).  Western argues that "a contractual liability exclusion acts to bar coverage for liability arising from a contractual duty." (Def.'s Mot. for Summ. J. 20:17–18).  Western also asserts that, because all of PCA's alleged causes of action are rooted in a contractual duty, the contractual liability exclusion precludes all arguable or possible coverage. (*Id.* 22:10–12).

The Court does not find that all arguable or possible coverage is precluded by the contractual liability exclusion.  This exclusion could not preclude all arguable or possible coverage of liability arising from the negligence and negligent supervision claims.  The contractual liability exclusion in the Western Policy contains an exception for damages "[t]hat the insured would have in the absence of the contract or agreement." (Ex. 2 to Pl.'s Partial Mot. for Summ. J. at 43).  This exception to the exclusion could prevent the exclusion of coverage

for liability arising from the claims of negligence and negligent supervision because they could have been alleged in the absence of the KOA Contract.  Therefore, this exclusion does not preclude all arguable or possible coverage to all of the claims in the PCA Complaint.

Third, Western argues that the Property Damage exclusion applies to all of the claims alleged in the PCA complaint. (Def.'s Mot. for Summ. J. 25:8–26:2).  This exclusion precludes coverage for certain types of "property damage," including "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." (Ex. 2 to Pl.'s Partial Mot. for Summ. J. at 45).  This exclusion, however, does not apply if the "property damage" is included in the "products-completed operations hazard," which is defined as "…'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work'…." (Ex. 3 to Pl.'s Partial Mot. for Summ. J. at 7).  However, "[w]ork that has not been completed or abandoned," is not included in the products-completed operations hazard. (*Id.*)  Moreover, the definition provides that "'your work' will be deemed completed…[w]hen that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project." (*Id.*)

Western concedes that the Nevada Property has "been put to its intended use by PCA for several years," however, it apparently misreads its own policy and incorrectly states that "when work has been completed and put to its intended use, it no longer falls within the products-completed operations hazard." (Def.'s Mot. for Summ. J. 25:20–26:1).  Since the Nevada Property has been put to its intended use, it has been completed under the Western Policy.  As a result, the Nevada Property meets the definition of "products-completed operations hazard," and therefore, the Property Damage exclusion does not apply.

Fourth, Western asserts that the Damage to Impaired Property exclusion precludes coverage to "the property that was not physically injured or damaged." (Def.'s Mot. for Summ.

J. 26:3–17).  This exclusion precludes coverage for "'[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'…." (Ex. 2 to Pl.'s Partial Mot. for Summ. J. at 46).  This exclusion does not preclude coverage for property that has been physically injured or damaged.  As discussed above, the PCA Complaint alleges physical damage or injury to at least a portion of the property.  (*See* Ex. 5 to Pl.'s Mot. for Partial Summ. J. ¶ 30).  Accordingly, this exclusion alone does not preclude all arguable or possible coverage.

Fifth, Western argues that the Recall of Product, Work or Impaired Property exclusion precludes coverage for damages arising from the portions of the Nevada Property that were withdrawn from use. (Def.'s Mot. for Summ. J. 26:18–27:2).  This exclusion precludes coverage as follows:

> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: …
>
> (2) "Your work"…
>
> If such …work…is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(Ex. 2 to Pl.'s Partial Mot. for Summ. J. at 46).  Additionally, the PCA Complaint alleges that "[t]he defects at [the Nevada Property] caused *portions of the complex* to be unsuitable for occupation by tenants, resulting in loss of rental payments from tenants to PCA." (Ex. 5 to Pl.'s Mot. for Partial Summ. J. ¶ 61 (emphasis added)).  Even if this exclusion applied, it would only apply to the portions of the complex withdrawn from use.  Therefore, this exclusion, alone, does not preclude all arguable or possible coverage.

In conclusion, the exclusions asserted by Western do not collectively preclude all arguable or possible coverage under the Western Policy.  Additionally, upon an independent

comparison of the allegations in the PCA Complaint with the terms of the Western Policy, the Court finds that the PCA Complaint potentially alleges property damage caused by an occurrence that takes place in the coverage territory within the policy period that could lead to possible or arguable coverage under the Western Policy.  Moreover, the Court finds that the exclusions in the Western Policy do not collectively preclude all possible or arguable coverage.  Accordingly, the Court finds that Western's duty to defend under the Western Policy was triggered by the PCA Complaint.  Therefore, Western's Motion for Summary Judgment is **DENIED** and Evanston's Partial Summary Judgment is **GRANTED** as to the claim of declaratory judgment.  The Court declares that Western has a duty to defend KOA in the underlying action, is obligated to reimburse Evanston for a portion of the defense fees and costs incurred, and is obligated to immediately join in and contribute to the defense of KOA in the underlying action.

### c.  Equitable Contribution

Evanston asserts in its Motion for Partial Summary Judgment that, since Western has a duty to defend KOA in the underlying action, partial summary judgment can be granted that Evanston is entitled to contribution from Western for a portion of the costs that Evanston has and will incur in KOA's defense. (Pl.'s Mot. for Partial Summ. J. 19:8–21, ECF No. 14). Evanston has not presented evidence showing what expenses it is entitled to as a matter of law, nor has it requested a specific amount it is entitled to as a matter of law.  Additionally, Evanston has not presented evidence showing what portion of costs Western is responsible for as a matter of law, nor has it requested such apportionment.  However, this lack of evidence does not affect this Court's ability to find Western is liable for the expenses it should have contributed to the underlying action.  *See* Fed. R. Civ. P. 56(d)(2) ( "An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."); *see also Thoresen v. Lumbermens Mut. Casualty Co.*, 351 F.2d 573 (7th Cir. 1965)

(affirming a grant of partial summary judgment against an insurer, which the trial court found liable for legal expenses it should have incurred to defend its insured, although the amount of these expenses was not initially adjudicated).

Nevada has not addressed the duty of an insurer to contribute to an insured's defense by another insurer. Therefore, this court must predict how the Nevada Supreme Court would decide this issue "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Arizona Elec. Power Co-op. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). The Nevada Supreme Court has often turned to California decisions when faced with issues of first impression. *See, e.g.*, *Volvo Cars of North America, Inc. v. Ricci*, 137 P.3d 1161, 1164 (Nev. 2006); *Cheung v. Eighth Judicial Dist. Court*, 124 P.3d 550, 559 (Nev. 2005). Accordingly, this court will also turn to California law in this case.

Under California law, "the right to contribution arises when more than one insurer is obligated to defend the same loss or claim, and one insurer has … defended the action without any participation by the others." *RSUI Indem. Co. v. Discover P&C Ins. Co.*, 2013 WL 5375528, *5 (E.D. Cal. Sept. 24, 2013) (citing *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal.Rptr.2d 296, 303 (Cal. Ct. App. 1998)).  Additionally, "a prerequisite to recovery under this theory is that both insurance companies share the same level of obligation on the same risk." *Id.*

The Court finds, and Western does not dispute, that both Evanston and Western shared the same level of obligation on the same risk.  Specifically, both parties provided general commercial liability to KOA.  Accordingly, because the Court finds that Western has a duty to defend KOA pursuant to the Western Policy, Evanston has a right to contribution.  Because Evanston has only requested partial summary judgment as to a right to contribution, issues pertaining to apportionment and amount of contribution remain to be determined.  Therefore,

Evanston's Motion for Partial Summary Judgment is **GRANTED** as to the claim of equitable contribution.

**IV.   CONCLUSION**

     **IT IS HEREBY ORDERED** that Western's Motion to Reconsider (ECF No. 47) is **DENIED**.

     **IT IS FURTHER ORDERED** that Western's Motion for Summary Judgment (ECF No. 29) is **DENIED**.

     **IT IS FURTHER ORDERED** that Evanston's Motion for Partial Summary Judgment (ECF No. 14) is **GRANTED**. The apportionment and amount of contribution by Western remains to be determined.

     The Clerk of the Court shall enter judgment accordingly.

     DATED this 25th day of September 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge