# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

EVANSTON INSURANCE COMPANY, )
)
            Plaintiff, )     Case No.: 2:13-cv-01268-GMN-CWH
    vs. )
)     **ORDER**
WESTERN COMMUNITY INSURANCE )
COMPANY and DOES 1 through 10, )
inclusive, )
)
            Defendants. )
_____ )

Pending before the Court is a Motion for Summary Judgment (ECF No. 73) filed by

Plaintiff Evanston Insurance Company ("Evanston").  Defendant Western Community

Insurance Company ("Western") filed a Response (ECF No. 80), and Evanston filed a Reply

(ECF No. 82).

## I.    BACKGROUND

This case arises from a dispute over insurance coverage for ongoing litigation in

Nevada state court related to defects in the construction of an apartment complex located in

Pahrump, Nevada ("the Nevada Property"). (Compl. ¶ 5, ECF No. 1).  The underlying action in

Nevada state court involves a suit between the owner/developer of the Nevada Property,

Pahrump Courtyard Associates ("PCA"), and the general contractor for the construction of the

Nevada Property, KOA Development, Inc. ("KOA"). (*Id.* ¶¶ 5, 6(a)).  PCA entered into a

contract with KOA (the "KOA Contract"), construction on the Nevada Property commenced in

February 2002, and KOA issued a notice of completion on January 21, 2003. (*Id.* ¶¶ 6(a)–(b)).

In 2005, problems with the construction were first discovered by PCA. (*Id.* ¶ 6(c)).

Later, in 2011, a consultant determined that "portions of the complex [were] unsuitable for

tenant occupation." (*Id.* ¶ 6(d)).  The complaint in the underlying action ("PCA Complaint") alleges causes of action against KOA for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of express warranties; (4) breach of the implied warranty of good workmanship; (5) breach of the implied warranty of habitability; (6) breach of the implied warranty of fitness for a particular purpose; (7) express indemnification; (8) implied contractual indemnification; (9) equitable indemnification; (10) attorneys' fees; (11) negligence; (12) negligent supervision; (13) negligent misrepresentation; and (14) construction deficiencies arising from willful misconduct or fraudulent concealment under Nevada Revised Statutes section 11.202. (*Id.* ¶ 6(e)).

Plaintiff Evanston is an insurance company incorporated under the laws of Illinois (*Id.* ¶ 1).  Evanston had issued a commercial general liability policy to KOA, covering the period of March 22, 2002 to March 22, 2003. (*Id.* ¶ 7).  Pursuant to that policy, Evanston is currently defending KOA in the underlying state court construction defect action. (*Id.* ¶ 8).

Western is an insurance company incorporated under the laws of Idaho. (*Id.* ¶ 2).  Western also issued a "commercial general liability policy, No. 8B894201," to KOA for the policy period of March 22, 2003 to March 22, 2007 (the "Western Policy"). (*Id.* ¶ 9).  The Western Policy allegedly "requires Western to pay those sums that th[e] insured becomes legally obligated to pay as damages because of property damage that takes place during its policy periods." (*Id.* ¶ 10).  Evanston also asserts that "[t]he Western policy further requires Western to defend the insured, subject to specified conditions, against any suit seeking such damages." (*Id.*).  Furthermore, Evanston alleges that KOA's insurance policy with Western "applies to property damage caused by an occurrence that takes place in the coverage territory, which includes Nevada." (*Id.*).

Based on the Western Policy, Evanston commenced the instant action seeking: (1) a declaratory judgment from the Court that Western has a duty to defend KOA in the underlying

action, is obligated to reimburse Evanston for a portion of the defense fees and costs incurred, and is obligated to immediately join in and contribute to the defense of KOA in the underlying action; and (2) equitable contribution for the defense fees and costs Evanston has incurred and will incur in the defense of the underlying action. (*Id.* ¶¶ 13–19).  Specifically, Evanston contends that some of the damage to the Nevada Property occurred during Western's policy period, yet Western denied coverage to KOA.  (*Id.* ¶¶ 11–12).

On September 26, 2014, the Court entered an Order (ECF No. 59), granting Evanston's Motion for Partial Summary Judgment (ECF No. 14).  Specifically, the Court held that "Western has a duty to defend KOA in the underlying action, is obligated to reimburse Evanston for a portion of the defense fees and costs incurred, and is obligated to immediately join in and contribute to the defense of KOA in the underlying action." (Order 16:9–12, ECF No. 59).  However, the Court acknowledged that, "[b]ecause Evanston has only requested partial summary judgment as to a right to contribution, issues pertaining to apportionment and amount of contribution remain to be determined." (*Id.* 17:24–25).  Evanston has now filed the instant Motion for Summary Judgment seeking a determination of the apportionment and amount of contribution issues. (ECF No. 73).

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid

summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.    <u>DISCUSSION</u>

In its Motion for Summary Judgment, Evanston argues that the Court should apply a "time on the risk" allocation of defense costs. (Mot. Summ. J. 5:16–17, ECF No. 73). Moreover, using the "time on the risk" allocation, Evanston argues that Western is responsible for 96.1% of the KOA defense costs. (*Id.* 5:19–20).  Specifically, Evanston asserts that, as of November 2015, it has paid KOA defense costs in the amount of $248,079.15, and Western must reimburse Evanston $238,404.06. (*Id.* 5:20–22).  Finally, Evanston asserts that it is entitled to a declaration that Western must reimburse Evanston 96.1% of the KOA defense costs that Evanston pays going forward. (*Id.* 5:25–26).

In the Court's September 26, 2014 Order, the Court acknowledged that "Nevada has not addressed the duty of an insurer to contribute to an insured's defense by another insurer," and looked to California law on the issue. (Order 17:4–19, ECF No. 59).  Accordingly, the Court will also look to California law to determine the present issue of apportionment.

Under California law, there is no fixed rule for allocating defense costs among primary insurers covering the same loss.  California courts consider "the varying equitable considerations which may arise … and which depend on the particular policies of insurance, the

nature of the claim made, and the relation of the insured to the insurers." *Signal Cos. Inc. v. Harbor Ins. Co.*, 612 P.2d 889, 895 (Cal. 1980); *see also Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 77 Cal. Rptr. 2d 296, 312–13 (Cal. Ct. App. 1998); *Stonewall Ins. Co. v. City of Palos Verdes Estates*, 54 Cal. Rptr. 2d 176, 200 n.14 (Cal. Ct. App. 1996); *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 52 Cal. Rptr.2d 690, 708 (Cal. Ct. App. 1996); *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 222 Cal. Rptr. 276, 288–89 (Cal. Ct. App. 1986). Thus, the exact allocation is a decision that ultimately rests in the discretion of the Court.

In *Centennial Ins. Co. v. United States Fire Ins. Co.*, 105 Cal. Rptr. 2d 559 (Cal. Ct. App. 2001), the California appellate court held:

> In choosing the appropriate method of allocating defense costs among multiple liability insurance carriers, each insuring the same insured, a trial court must determine which method of allocation will most equitably distribute the obligation among the insurers 'pro rata in proportion to their respective coverage of the risk,' as 'a matter of distributive justice and equity.'   As such, the trial court's determination of which method of allocation will produce the most equitable results is necessarily a matter of its equitable judicial discretion.

105 Cal. Rptr. 2d at 562.[1]

---

[1] The *Centennial* court identified six methods that California courts have used to apportion defense and indemnity costs:

> (1) apportionment based upon the relative duration of each primary policy as compared with the overall period of coverage during which the 'occurrences' 'occurred' (the 'time on the risk' method); (2) apportionment based upon the relative policy limits of each primary policy (the 'policy limits' method); (3) apportionment based upon both the relative durations and the relative policy limits of each primary policy, through multiplying the policies' respective durations by the amount of their respective limits so that insurers issuing primary policies with higher limits would bear a greater share of the liability per year than those issuing primary policies with lower limits (the 'combined policy limit time on the risk' method); (4) apportionment based upon the amount of premiums paid to each carrier (the 'premiums paid' method); (5) apportionment among each carrier in equal shares up to the policy limits of the policy with the lowest limits, then among each carrier other than the one issuing the policy with the lowest limits in equal shares up to the policy limits of the policy with the next-to-lowest limits, and so on in the same fashion until the entire loss has been apportioned in

Here, given the particular circumstances of this case, the Court finds that allocation according to "time on the risk" would be most equitable and "accomplish substantial justice" among the parties. *Fireman's Fund*, 77 Cal. Rptr. 2d at 296, 303.  It is undisputed that Evanston provided coverage to KOA from March 22, 2002 to March 22, 2003 (Ex. 1 to Mot. Summ. J., ECF No. 74-1), and Western provided coverage to KOA from March 22, 2003 to March 22, 2007 (Ex. 2 to Mot. Summ. J., ECF No. 74-2).  Moreover, it is undisputed that KOA issued a notice of completion on the Nevada Property on January 21, 2003. (Compl. ¶ 6, ECF No. 1). Therefore, the time on the risk began on January 21, 2003, when the construction of the Nevada Property completed.

Accordingly, Evanston was "on the risk" from January 21, 2003 to March 22, 2003—59 days.  Moreover, Western was "on the risk" from March 22, 2003 to March 22, 2007—1460 days.  Apportioning the KOA defense fees and costs according to the parties' time on the risk, the Court concludes that Evanston is liable for 3.9% of the KOA defense fees and costs, and Western is liable for 96.1% of the KOA defense fees and costs.

As to the amount of fees and costs that Evanston has already paid as of November 2015, Evanston has paid $248,079.15.[2] (Decl. of Elaine Fresch, ECF No. 73-1; Decl. of Phyllis Modlin, ECF No. 73-2; Exs. 4–6 to Mot. Summ. J., ECF Nos. 74-4–74-6).  Moreover, Western does not dispute this amount.  Accordingly, the Court finds that Western is liable for $238,404.06 of the KOA defense fees and costs paid as of November 2015.  Furthermore,

---

full (the 'maximum loss' method); and (6) apportionment among each carrier in equal shares (the 'equal shares' method).

105 Cal. Rptr. 2d at 562–63.
[2] Evanston filed a Motion for Leave to File Documents Under Seal. (ECF No. 75).  Specifically, Evanston requests to file under seal an exhibit to its Motion for Summary Judgment that contains "numerous invoices generated by the law firm Selman Breitman LLP ('Selman') which were subsequently paid by Evanston in the defense of KOA Development, Inc." (Mot. for Leave to File Documents Under Seal 1:22–26).  However, the Court reaches its disposition of Evanston's Motion for Summary Judgment without the need of the exhibit Evanston wishes to file under seal.  Accordingly, the Court denies Evanston's Motion for Leave to File Documents Under Seal as moot.

Western is liable going forward for 96.1% of the KOA defense fees and costs paid after November 2015.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED** that Evanston's Motion for Leave to File Documents Under Seal (ECF No. 75) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Evanston's Motion for Summary Judgment (ECF No. 73) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Plaintiff Evanston Insurance Company and against Western Community Insurance Company in the amount of $238,404.06.  Furthermore, Western shall be liable going forward for 96.1% of the KOA defense costs paid after November 2015.

The Clerk of the Court shall enter judgment accordingly and thereafter close this case.

**DATED** this __15__ day of April, 2016.


_____
Gloria M. Navarro, Chief Judge
United States District Judge